IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA CRINER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-09-3859 |
| | § | |
| TEXAS - NEW MEXICO POWER | § | |
| COMPANY, PNM RESOURCES, | § | |
| INC., TNP ENTERPRISES, INC., | § | |
| and FIRST CHOICE POWER, L.P., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

     Pending is Defendants' Motion and Memorandum for Summary Judgment (Document No. 46). After reviewing the motion, response, reply, and the applicable law, the Court concludes that the motion should be granted.

I. Background

     In this § 1981 and Title VII action, Plaintiff Linda Criner, a black female, alleges that Defendants Texas - New Mexico Power Company (the "Power Company"), PNM Resources, Inc. ("PNM"), TNP Enterprises, Inc. ("Enterprises"), and First Choice Power, L.P. ("First Choice" and collectively, "Defendants") discriminated against her on the basis of her race and gender by failing to promote her to three separate positions: (1) Manager, Customer Service; (2) a lobbyist position; and (3) Manager, Retail Electric

Provider Liaison ("Manager, REP Liaison").[1]  Defendants moved for summary judgment with respect to all three positions,[2] but Plaintiff defended her discrimination claims regarding only the Manager, REP Liaison position, thereby abandoning those claims with respect to the former two positions.[3]  Plaintiff also asserts that Defendants' promotion and training practices have had a disparate impact on blacks and women.[4]

---

[1] Document No. 1 at 3-4 (Orig. Cmplt.).

[2] *See* Document No. 46.

[3] *See* F<small>ED</small>. R. C<small>IV</small>. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also, e.g.*, Scales v. Slater, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (noting that the plaintiff abandoned her disparate impact claim in district court when she neither contested defendant's arguments for dismissal of that claim nor suggested that her statistical evidence demonstrated pretext); Thompson v. Exxon Mobil Corp., 344 F. Supp. 2d 971, 977 (E.D. Tex. 2004) (holding that where the defendant fully briefed all of plaintiffs' claims on summary judgment, plaintiffs were deemed to have abandoned all claims to which they did not respond).

[4] Plaintiff's Complaint alleges generally that Defendants are liable for race and sex "discrimination."  Document No. 1 ¶¶ 29, 34.  However, the complaint appears to hinge this liability on discriminatory intent, *see* id. ¶¶ 28, 30-31, 33, 35-36, which is inconsistent with a disparate *impact* claim under Title VII.  *See* Munoz v. Orr, 200 F.3d 291, 299 (5th Cir. 2000) ("Disparate impact claims . . . do not require proof of intent to discriminate.").  "A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court," Cutrera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 113 (5th Cir. 2005).  However, construing Plaintiff's allegations of "discrimination" broadly in her favor, the Court will consider the disparate impact claim argued in her response.  *See infra* Part IV.

2

Plaintiff was hired by the Power Company in 1994 as a Community Affairs Specialist and Customer Relations Manager.[5] Plaintiff continues to work for the Power Company in the same position, which is now known as "Liaison, Regional Community."[6] Her job entails responding to customers, working on corporate citizenship programs, and developing and maintaining community relations.[7] At all times material to her complaint, Plaintiff reported to Pauline Moore, Power Company's Director of Transmission and Distribution Business Units.[8]

In late 2006, the Power Company created the position of Manager, Retail Electric Provider Liaison ("Manager, REP Liaison"). This position was posted, and five people applied for the position: Plaintiff, Gregory Myers, Tim Gerdes, Donald Hunt, and Ben Apolinar.[9] The job entailed managing field operations personnel; managing implementation of a new software program and future software projects; assisting the intermediary group between the utility and retail electric providers regarding tariff compliance and fees; assisting development of procedures for trading purchase agreements; and assisting in oversight of certain customer case

---

[5] Document No.1 at 3.

[6] Id.; Document No. 46, ex. 2 ¶ 3 (Moore Aff.).

[7] Document No. 46 ex. 2 ¶ 3.

[8] Id., ex. 2 ¶¶ 2-3.

[9] Id., ex. 4 ¶ 4.

3

operations.[10]  The five applicants were interviewed by a three-member panel, each of whom separately scored the applicants' answers to questions on a scale of 1-5.[11]  The scores were added; Plaintiff obtained the second-highest score with a 68, but Tim Gerdes scored a 125.[12]  Although Plaintiff had a college degree, which Gerdes did not, Gerdes had prior experience implementing new software programs and also had previous management experience within the Power Company and its affiliate, First Choice.[13]  He was selected for the position.

On February 22, 2007, Plaintiff filed a charge of discrimination with the EEOC against the Power Company alleging race discrimination due to the Power Company's failure to promote her.[14]  She subsequently filed this suit, wherein she alleges both race and sex discrimination based upon the failure to promote her, and now additionally argues disparate impact discrimination.

---

[10] Document No. 46, ex. 4-A (Job Posting).

[11] Document No. 46, ex. 4 ¶¶ 4-5; id., ex. 4-C.

[12] Document No. 46, ex. 4-C.

[13] Document No. 46, ex. 4 ¶¶ 6-7; id., ex. 8 at 52-53 (Burke Depo.); id., ex. 9 ¶¶ 3-5 (Burke Aff.).

[14] Document No. 46, exs. 10, 11.

## II. Legal Standards

Rule 56(a) provides that summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for

the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

## III. Disparate Treatment

Plaintiff asserts claims of disparate treatment, or intentional discrimination, in Defendants' failure to promote her. Because Plaintiff lacks direct evidence of discrimination, her claims are analyzed under the burden-shifting framework from McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).[15] Under this framework, Plaintiff must first create a presumption of

---

[15] Because "[c]laims of intentional discrimination brought under Title VII and Section 1981 require the same proof to establish liability," Plaintiff's discrimination claims will be analyzed "under the Title VII rubric of analysis." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 422 n.1 (5th Cir. 2000); *see also* Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002). Furthermore, although Defendants assert that some of the entities sued may not be subjected to Title VII or section 1981 liability due to their lack of any employment or contractual relationship with Plaintiff, or due to Plaintiff's failure to name them in her EEOC charge, the Court need not resolve this issue. Even if all entities were to be considered joint employers, and therefore potentially liable for Plaintiff's discrimination claims, Plaintiff's claims would fail against each as a matter of law, as discussed in more detail below.

6

unlawful discrimination by presenting evidence of a *prima facie* case.  To establish a *prima facie* case of discriminatory failure to promote, Plaintiff must show that: (1) she is a member of a protected class; (2) she sought and was qualified for an available position; (3) she was not selected; and either (4a) the employer awarded the position to someone outside the protected class, or (4b) after the employer rejected the plaintiff, the employer continued to seek applicants with plaintiff's qualifications.  *See* Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680-81 (5th Cir. 2001); LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996); *see also* Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004).

 The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000).  The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"  Id. (quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)).  If the employer sustains its burden, the burden shifts back to the plaintiff to establish that the employer's proffered reason is merely a pretext for discrimination.  *See* Davis, 383 F.3d at 317.[16]

---

[16] Although Plaintiff's complaint states, without elaboration, that the "mixed motive analysis applies to this case," Document No. 1 at 5, she has presented no evidence or arguments relating to a

A.   <u>Defendants' Legitimate, Non-Discriminatory Reason</u>

Plaintiff makes out a prima facie case, and Defendants have moved based on their articulated non-discriminatory reason for choosing Tim Gerdes. Defendants point to Gerdes's superior qualifications for the Manager, REP Liaison, as the reason for his being hired over Plaintiff. The position's duties included: managing field operations personnel; managing implementation of a new software program and future software projects; assisting the tariff compliance and fee group; and assisting in development of procedures for trading purchase agreements and in overseeing customer case operations.[17] According to Allan Burke, who made the hiring decision for the position, the candidate needed "a working knowledge of all [the Power Company's] systems," because the software package "was going to interface with . . . several existing back office systems. So anyone that had existing

---

mixed-motive theory of discrimination. Because she has not advanced a mixed-motive theory, her claim is analyzed only for evidence of pretext. *See* <u>McCoy-Eddington v. Brazos County</u>, No. H-05-0395, 2007 WL 1217989, at *4 (S.D. Tex. Apr. 24, 2007) (confining analysis to pretext when plaintiff neither pled nor argued for mixed-motive); <u>Johnson v. Saks Fifth Ave. Tex., L.P.</u>, Civ. A. No. H-05-1237, 2007 WL 781946, at *21 (S.D. Tex. Mar. 9, 2007) (same); *see also* <u>Nasti v. CIBA Specialty Chems. Corp.</u>, 492 F.3d 589, 595 (5th Cir. 2007) (concluding that the plaintiff waived consideration on appeal of a mixed-motive argument by failing "to present her mixed-motives claim to the district court in the first instance").

[17] Document No. 46, ex. 4A at 1.

knowledge of those systems was further ahead on the learning curve."[18]

Gerdes "had supervised people in the past that did some of the . . . same basic skills" as the employees to be supervised by the Manager, REP Liaison.[19] Gerdes had also been the "project lead" in implementing the Power Company's billing and customer information software system in 2000.[20] Finally, Gerdes's aggregate score of 125 by the three-person interview panel was significantly higher than Plaintiff's aggregate score of 68.[21]

B.  <u>Plaintiff's Showing of Pretext</u>

"[T]he promotion of a better qualified applicant is a legitimate and nondiscriminatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory."  <u>Jefferies v. Harris Cnty. Cmty. Action Ass'n</u>, 693 F.2d 589, 590-91 (5th Cir. 1982).  Plaintiff therefore "has two methods available to [her] to try to prove that [Defendants'] proffered reason for failing to promote [her] was a pretext for racial discrimination: (1) [Plaintiff] could show that [Defendants'] proffered explanation is false or 'unworthy of

---

[18] <u>Id.</u>, ex. 8 at 46 (Burke Depo.).

[19] <u>Id.</u>, ex. 8 at 53.

[20] <u>Id.</u>, ex. 8 at 47.

[21] <u>Id.</u>, ex. 4C.

9

credence'; or (2) [Plaintiff] could try to prove that [she] is 'clearly better qualified' than the person selected for the position." Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc., 482 F.3d 408, 412 (5th Cir. 2007) (internal footnotes omitted).

A plaintiff's evidence compelling "disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." St. Mary's, 113 S. Ct. at 2749 (parentheses in original).  Regarding a showing that Plaintiff is "clearly better qualified," the "bar is set high because . . . differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 357 (5th Cir. 2001) (quoting Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999)).

Plaintiff has pointed to no evidence that Defendants' non-discriminatory explanation for the selection of Gerdes for the REP Liaison position is false or unworthy of credence.[22]  Furthermore,

---

[22] Broadly interpreted, Plaintiff's response alleges that, because the subjective judgment of supervisors plays a role in determining which of Defendants' employees receive career-

she has failed to raise a fact issue that she was "clearly more qualified" than Gerdes for the REP Liaison position. Although Plaintiff scored second-highest among the five interviewees, her score of 68 was only a little over *half* of Gerdes's superior score of 125. Gerdes also had prior experience supervising and implementing software, and part of the position's duties were to be managing implementation of a new software program and future software projects.[23] Because Plaintiff has failed to present evidence sufficient to raise a genuine issue of fact that Defendants' proffered non-discriminatory reason for promoting Gerdes are pretextual, Defendants are entitled to summary judgment on Plaintiff's intentional discrimination claim.

---

developing positions, those decisions are suspect. However, "an employer's policy of leaving promotion decisions to the unchecked discretion of lower level supervisors should itself raise no inference of discriminatory conduct." Watson v. Fort Worth Bank and Trust, 108 S. Ct. 2777, 2786 (1988); *see also* McDonnell Douglas, 93 S. Ct. at 1824-25 (rejecting the premise that, because the "stated reason for refusing to rehire respondent was a subjective rather than objective criterion," the reason was entitled "little weight in rebutting charges of discrimination" (internal quotation marks and citation omitted)).

[23] Plaintiff points to Gerdes's lack of a college degree. Document No. 70 at 6. However, the job posting for the position required a four-year degree with five to seven years related experience, "*or* equivalent combination of education and/or experience related to the discipline." Document No. 46, ex. 4A at 2.

11

IV. <u>Disparate Impact</u>

Plaintiff argues a disparate impact claim in her response, stating that her lack of qualifications necessary for promotion is attributable to Defendants' failure to provide Plaintiff the same opportunities for training and career advancement that are provided to white employees. In support of her position, she alleges that Defendants' management employees do not happen to be friends with blacks. Combined with management's tendency to offer training and useful experience to friends, Plaintiff contends that this constitutes an employment practice that has a disparate impact on black employees.

Plaintiff, however, does not make out a *prima facie* case of Title VII disparate impact discrimination sufficient to survive summary judgment.[24] Such a showing requires (1) identification of an employment practice that has the allegedly disproportionate impact; (2) demonstration of a disparate impact that the practice has on a protected class; and (3) demonstration of a causal relationship between the practice and the disparate impact. <u>Gonzales v. City of New Braunfels</u>, 176 F.3d 834, 839 n.26 (5th Cir. 1999) (citing, *inter alia*, 42 U.S.C. § 2000e-2(k)(1)(A)(i)).

---

[24] Plaintiff has no disparate impact theory under her section 1981 claim. *See* <u>Dehoyos v. Allstate Corp.</u>, 345 F.3d 290, 300 n.1 (5th Cir. 2003) ("In this court, §§ 1981 and 1982 have been confined to cases involving intentional racial discrimination, not disparate impact claims.").

Her evidence of a *prima facie* case is insufficient on almost every front.

Plaintiff points to a chart showing the breakdown, by race and gender, of various employee categories within the Power Company--officials and managers, professionals, technicians, and other positions--which Plaintiff asserts shows "the relatively small number of Black professionals employed by Defendants."[25] While Plaintiff alleges that Defendants constitute a single employer due to their interrelatedness,[26] her employment data evidence is *solely* from the Power Company and not from its affiliates. Furthermore, Plaintiff has offered no evidence of the size and racial composition of the pool of potential qualified candidates for internal promotions or career training opportunities, nor any evidence of the number and racial compositions of those who applied for and those who received promotions and opportunities. *See* McClain v. Lufkin Indus., Inc., 519 F.3d 264, 280 (5th Cir. 2008) (noting "that actual applicant flow data are superior, and should be used if available" in establishing disparate impact in promotions, but holding that the district court did not err in permitting the parties "to analyze potential applicant flow data" because the "actual data [were] unreliable"); *cf.* Stout v. Potter,

---

[25] Document No. 58 at 4; id., ex. F.

[26] *See* Document No. 70 at 12-13 (citing and discussing Trevino v. Celanese Corp., 701 F.2d 397, 403-04 (5th Cir. 1983)).

276 F.3d 1118, 1123 (9th Cir. 2002) ("In the context of promotions, the appropriate comparison is between the composition of candidates seeking promotion and the composition of those actually promoted." (citing Waisome v. Port Auth., 948 F.2d 1370, 1372 (2d Cir. 1991))).

Plaintiff, moreover, has provided no statistical evidence. Although the Fifth Circuit has recognized that "[a] plaintiff may use statistical as well as non-statistical evidence in establishing a prima facie case of disparate impact," Page v. U.S. Indus. Inc., 726 F.2d 1038, 1053 (5th Cir. 1984),[27] a *prima facie* case "[o]rdinarily . . . requires a showing of a substantial 'statistical disparity between protected and non-protected workers in regards to employment or promotion.'" Stout v. Baxter Healthcare Corp., 282 F.3d 856, 860 (5th Cir. 2002) (quoting Munoz v. Orr, 200 F.3d 291, 300 (5th Cir. 2000)) (Garwood, J.); *see also* Watson v. Fort Worth Bank and Trust, 108 S. Ct. 2777, 2785, 2787 (1988), 108 S. Ct. at 2785, 2787 (observing that "[t]he evidence in these 'disparate impact' cases usually focuses on statistical disparities, rather than specific incidents," and further noting "the inevitable focus on statistics in disparate impact cases"). Indeed, the Fifth Circuit has encountered few situations where non-statistical evidence sufficiently carries a plaintiff's burden to

---

[27] *See also* Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 579 (5th Cir. 2003).

14

establish her *prima facie* case. *See* Garcia v. Woman's Hosp. of Tex., 97 F.3d 810, 813, 814 (5th Cir. 1996) (holding that "[s]tatistical evidence would be unnecessary" if the plaintiff could establish that "all or substantially all pregnant women would be advised by their obstetrician not to lift 150 pounds," which could have been established through an obstetrician's expert testimony); *see also* Stout, 282 F.3d at 860 (characterizing Garcia as "[i]n effect" providing "a procedural shortcut" to alleviate plaintiffs of "a burden they would ordinarily bear: the production of statistical evidence comparing the effects of a challenged policy on protected and unprotected groups of employees"); Bunch v. Bullard, 795 F.2d 384, 395 (5th Cir. 1986) (citing, *inter alia*, Page, and holding that Plaintiff's evidence--that 12 of 15 white applicants for promotion were successful as compared to only 3 of 13 black applicants--although perhaps too small a sample size to be statistically significant, established a "pattern of racial selection," which, "if imposed on a larger work force, would without question provide statistically significant results").

Plaintiff's evidence consists only of three affidavits: her own; that of Ina Robinson, a black woman formerly "employed by defendants"; and that of Ronnie Floyd, a black man who currently is "employed by defendants."[28] The affidavits together identify only

---

[28] Document No. 58, Criner Aff.; Document No. 70, ex. A (Robinson Aff.); id., ex. B (Floyd Aff.). Neither Robinson nor Floyd specifies *which* Defendant is that particular affiant's employer.

15

two specific positions (in addition to the allegations of Plaintiff's complaint) that were not given to a black employee but to a white employee: Robinson identifies a former supervisor's hiring of "his best friend's wife" and states that Gerdes was one of the "people" appointed to a newly formed software implementation team, but does not identify the races and numbers of the other "people."[29] Floyd, in his affidavit, states that a supervisor "failed to provide me with the paperwork [required to apply to a post] in a timely manner," which made him unable to interview.[30] This alone fails to give rise to an inference that the supervisor failed to provide the paperwork because Floyd was black, Floyd was not his friend, or because the supervisor had reserved the spot for a friend. Further, Floyd does not state the race or identity of the employee who *did* get the position.[31] Floyd complains that he "was not given an opportunity to interview because I am Black."[32] The affidavits contain other conclusory statements, as well: that a supervisor "made hiring and promotion decisions based upon his personal relationships,"[33] and that "[m]any of the supervisors are friends outside of work, and often promote those that they consider

---

[29] Document No. 70, ex. A at 1-2 (Robinson Aff.).

[30] Id., ex. B at 2 (Floyd Aff.).

[31] *See* id.

[32] Id.

[33] Id., ex. A at 1.

16

to be friends . . . who are predominantly white."[34]  Such conclusory and speculative statements in affidavits are not competent summary judgment evidence.  *See* <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002) ("This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." (quotation marks and citation omitted)).[35]

This is not a case like <u>Garcia</u>, where expert testimony might establish a condition shared across a protected group that is adversely impacted by an employment policy.  Moreover, the affidavit evidence that Plaintiff submits is insufficient as a matter of law to establish a "pattern of racial selection" that could be deemed equivalent to a "statistically significant" disparate impact on the subject class.  *See* <u>Hill v. Miss. State Emp't Serv.</u>, 918 F.2d 1233, 1238 (5th Cir. 1990) ("Statistics play an important evidentiary role: circumstantial evidence of disparate treatment often includes (but need not) statistical evidence, and

---

[34] <u>Id.</u>, ex. B at 2.

[35] The summary judgment evidence also includes Allan Burke's deposition--the same manager who told Gerdes that he would be a good candidate for the Manager, REP Liaison position before Gerdes applied for the position--in which Burke testified that he had previously suggested to Eric Morgan, a black male, that he apply for another position.  Morgan did so, and received the promotion; he is now in charge of the meter readers in Albuquerque. <u>Id.</u>, ex. C at 26-27 (Burke Depo.).

17

a finding of disparate impact requires statistically significant disparities.").

Finally, other than Floyd's wholly conclusory statement that managers' friends are "predominantly white,"[36] Plaintiff proffers no comparison between the racial composition of managers' friends and the racial composition of Defendants' employees who receive career training and promotions at the suggestion of supervisors. She has thus failed to show causation, as well. As aptly put by the Fifth Circuit:

> The causal requirement recognizes that underrepresentation of blacks might result from any number of factors, and it places an initial burden on the plaintiff to show that the specific factor challenged under the disparate impact model results in the discriminatory impact.

Carroll v. Sears, Roebuck & Co., 708 F.2d 183, 189-90 (5th Cir. 1983). In other words, Plaintiff's evidence fails to account for other possible explanations. *See, e.g.*, Tagatz v. Marquette Univ., 861 F.2d 1040, 1045 (7th Cir. 1988) (cited with approval in Munoz, 200 F.3d at 301) (holding that an expert's statistics were "essentially worthless" where they failed to control for other variables that may have explained differences in salaries).

In sum, Plaintiff has not raised a genuine issue of material fact that Defendants' articulated non-discriminatory reasons are pretextual, and has not made a *prima facie* case of disparate impact

---

[36] *See supra* n.30.

discrimination.  Defendants are therefore entitled to summary judgment.

## V. Order

     For the foregoing reasons, it is

ORDERED that Defendants Texas - New Mexico Power Company, PNM Resources, Inc., TNP Enterprises, Inc., and First Choice Power, L.P.'s Motion and Memorandum for Summary Judgment (Document No. 46) is GRANTED, and Plaintiff Linda Criner's claims are DISMISSED WITH PREJUDICE.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 25th day of April, 2011.

                                                 _____
                                                EWING WERLEIN, JR.
                                                UNITED STATES DISTRICT JUDGE